**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| vs. | : | |
| | : | NO. 08-CR-0223-1 |
| JERRICK BART LIMEHOUSE | : | |

**MEMORANDUM AND ORDER**

**JOYNER, J.** **April 9 , 2021**

This criminal action is presently before the Court for adjudication of Defendant's *Pro Se* Emergency Motion for Compassionate Release/Reduction in Sentence pursuant to 18 U.S.C. §3582(c)(1)(A). The Government opposes the relief sought by Defendant. For the reasons articulated in the paragraphs which follow, the motion shall be denied.

**Factual Background**

In August 2009, Defendant Jerrick Bart Limehouse ("Limehouse") entered an open plea of guilty to one count of conspiracy and two counts of possession of a firearm by a convicted felon. The charges arose out of an incident which occurred around 3 a.m. on May 2, 2007 at a residence on Hellerman Avenue in Philadelphia. On that date, Defendant began

pounding on the front door of the Hellerman Avenue residence, causing damage to the lock and then firing an unlawfully purchased Ruger semi-automatic handgun three times on the front lawn of that property before fleeing in a zig-zag pattern down Castor Avenue while continuing to hold the gun and dropping bullets as he ran. Defendant was observed engaging in this bizarre behavior by an off-duty SEPTA police officer, who continued to follow him until he was apprehended by a Philadelphia police officer. Shortly prior to being taken into police custody, Defendant fired an additional shot into the street.

Given Defendant's prior convictions for possession, delivery and intent to deliver crack cocaine, burglary and trespass, his sentencing guideline range was 210 to 262 months' imprisonment. He was sentenced on November 19, 2009 to a term of imprisonment of 216 months. Defendant appealed his sentence to the Third Circuit and the sentence was affirmed on July 29, 2010. To date, Defendant has served 152 months of his sentence and has some 19 months of good time credit bringing his total time served to 171 months. He has had three disciplinary infractions while in custody, two of which were serious, although both occurred before his sentencing. The first of these - fighting with another inmate, occurred on April 28, 2009 and the second - possession of a dangerous weapon, took place on

November 3, 2009. Defendant is currently incarcerated at FCI Cumberland and is now 57 years of age.

By the motion which is now before us, Defendant seeks early release on the grounds that his underlying medical conditions pose a special threat to his health and well-being in light of the ongoing Coronavirus pandemic. Specifically, Defendant avers that because he suffers from chronic asthma he is at particular risk of serious illness or death should he contract COVID-19. In further support of his motion, Defendant submits that he is no longer a danger to society as he has been rehabilitated and he has two family members with whom he could reside in Philadelphia should the Court grant him early release.

**Legal Principles**

Generally, a federal court "may not modify a term of imprisonment once it has been imposed." Dillon v. U.S., 560 U.S. 817, 819, 130 S. Ct. 2683, 2687, 177 L. Ed.2d 271 (2010)(quoting 18 U.S.C. Section 3582(c)). Congress has, however, carved out a few, limited exceptions to this general principle. One of these exceptions provides for the so-called compassionate release of inmates, and is outlined in Section 3582(c)(1)(A) of Title 18 of the U.S. Code.[1] It provides for sentence modification as follows:

---

[1] Prior to 2018, a prisoner could only obtain compassionate release from incarceration upon a motion filed by the Director of the Bureau of Prisons. Section 603(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat.

(1) in any case –

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that –

(i) Extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; …

---

5194 (2018) expanded the availability of the compassionate release process by allowing defendants to directly petition the district courts for a reduction of sentence. United States v. Bayron, Crim. A. No. 95-338-01, 2021 U.S. Dist. LEXIS 29846 *4, 2021 WL 632677 *2 (E.D. Pa. Feb. 18, 2021)(citing United States v. Rodriguez, 451 F. Supp.3d 392, 395 (E.D. Pa. 2020)). See also, United States v. Trader, Crim. A. No. 04-680-06, 2021 U.S. Dist. LEXIS 29848 at *5, 2021 WL 632679 at *2 (E.D. Pa. Feb. 18, 2021).

As dictated above, the Section 3553(a) factors that must be considered are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and to provide the defendant with needed vocational or educational training, medical care or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant…
>
> (5) any pertinent policy statement issued by the Sentencing Commission … in effect on the date the defendant is sentenced;
>
> (6) the need to avoid unwarranted sentence disparities between defendants with similar records convicted of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. Section 3553(a)(1)-(7)

The applicable policy statement for "Reduction in Term of Imprisonment under 18 U.S.C. Section 3582(c)(1)(A) remains unchanged since the passage of the First Step Act and is articulated in Section 1B1.13 of the U.S. Sentencing Guidelines. It states:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. Section 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised

release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. Section 3553(a), to the extent that they are applicable, the court determines that –

(1)

(A) Extraordinary and compelling reasons warrant the reduction; or

(B)The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. Section 3559(c) for the offense or offenses for which the defendant is imprisoned;

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. Section 3142(g); and

(3) The reduction is consistent with this policy statement.

The Commentary to the Policy Statement provides greater clarity into what such extraordinary and compelling reasons warranting a sentence reduction may entail. Several examples are given including: terminal illness, serious physical or medical condition, serious functional or cognitive impairment, deteriorating physical or mental health because of age or the aging process "which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." In addition, certain family circumstances are recognized such as might arise upon the death or incapacitation of the caregiver of the defendant's minor child or children, and

the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for that spouse or partner, as are such other "extraordinary and compelling reason[s]" aside from or in combination with the other, described reasons as might be found to exist in the defendant's case. "Rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" and "the fact that an extraordinary and compelling reason could have reasonably been known or anticipated by the sentencing court does not preclude consideration" for a sentence reduction under Section 3582(c)(1)(A). (USSG Section 1B1.13, 18 U.S.C.A., Commentary Application Notes 1(A) – (D)).

Given that the Sentencing Commission's policy statement was not updated following passage of the First Step Act amendments, while it continues to provide helpful guidance, it does not preclude the district courts from considering other reasons raised by a defendant on a motion for compassionate release not specifically delineated in the policy statement so long as the court finds them to be extraordinary and compelling. Bayron, supra, 2021 U.S. Dist. LEXIS at *8 - *9 (citing United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020); United States v. Adeyemi, 470 F. Supp.3d 489, 510 (E.D. Pa. 2020); Rodriguez, 451 F. Supp.3d at 400). Indeed, "[i]n the absence of an applicable

policy statement from the Sentencing Commission, the District Court has discretion to determine what circumstances constitute extraordinary and compelling reasons for reduction of a sentence." Id.,(also citing United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) and United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020)). See also, United States v. Pawlowski, 967 F.3d 327, 330 (3d Cir. 2020)(holding that abuse of discretion standard of review applies to district court's adjudication of compassionate relief motion and that courts may consider the amount of time remaining to be served in inmate's sentence in ruling).

Simply stated then, a sentencing court may only reduce a defendant's sentence under Section 3582(c)(1)(A) if the following four conditions are satisfied: (1) the inmate has exhausted his administrative rights to appeal with the Board of Prisons or 30 days have passed since the submission of a request to the warden to petition the Bureau of Prisons to file a compassionate release motion on the inmate's behalf, whichever is earlier; (2) the court finds that extraordinary and compelling reasons warrant a sentence reduction; (3) the court's reduction would be consistent with any applicable policy statements issued by the Sentencing Commission; and (4) the proposed reduction would be consistent with the sentencing factors outlined in 18 U.S.C. Section 3553(a). United States v.

Georgiou, Crim. A. No. 09-088, 2021 U.S. Dist. LEXIS 55245, *11, 2021 WL 1122630 (E.D. Pa. March 23, 2021)(citing United States v. Brown, 13-cr-176-05, 2020 U.S. Dist. LEXIS 90187, 2020 WL 2615616, at *1 (E.D. Pa. May 22, 2020)); United States v. Trippett, Crim. A. No. 12-632-01, 2021 U.S. Dist. LEXIS 41449 at *6, 2021 WL 847155 (E.D. Pa. March 5, 2021). See also, United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) and United States v. Sparrow, No. 20-2674, 2021 U.S. App. LEXIS 6022, 2021 WL 796411 (3d Cir. March 2, 2021)(per curiam)(both noting importance of strict compliance with exhaustion requirement). Through it all, a defendant has the burden of establishing circumstances warranting his release. United States v. Cabrera, Crim. A. No. 18-304-01, 2021 U.S. Dist. LEXIS 21833 at*9, 2021 WL 411502 (E.D. Pa. Feb. 5, 2021); United States v. Neal, Crim. Nos. 08-cr-0628, 10-cr-0685, 2020 U.S. Dist. LEXIS 187749 at *10, 2020 WL 5993290 (E.D. Pa. Oct. 9, 2020).

**Discussion**

As the preceding authority makes clear, we are charged with first considering whether Mr. Limehouse has fulfilled the requirement of administrative exhaustion. On this point, Defendant has attached a copy of a document from his place of incarceration at FCI Cumberland which bears the heading "Response to Inmate Request to Staff Member," signed by Acting Warden C.L. Weber on August 19, 2020 denying Defendant's August

7, 2020 "Request for Compassionate Release/Reduction in Sentence" for the reason that his medical condition is currently being treated in the institution and is stable. The Government concedes that this evinces that Defendant has satisfied the administrative exhaustion mandate and that this Court has jurisdiction to consider his compassionate release motion.

We therefore next evaluate whether there are "extraordinary and compelling reasons" to warrant a sentence reduction. Defendant asserts that such extraordinary and compelling reasons are presented in his case as a consequence of the COVID-19 global pandemic combined with his severe case of asthma.

By now, it has been well-established that the novel coronavirus is a highly contagious and dangerous airborne virus which has thus far caused more than 30 million American cases of COVID-19 and nearly 550,000 American deaths. See, www.covid.cdc.gov/covid-data- tracker/ #cases_cases per100k last7days. Pennsylvania[2] alone has had a total of over 1.3 million cases since the inception of the pandemic with some 4,200 new cases in the last 7 days. Id. Given the close proximity in which prisoners are typically housed, it has been recognized that "COVID-19 poses a unique challenge to the prison

[2] In Maryland where Defendant is housed, there have been more than 418,000 cases of COVID-19 resulting in over 8,300 deaths over the course of the pandemic. Approximately 1,300 new cases have been reported in the past 7 days.

system." United States v. Nunez, 483 F. Supp.3d 280, 283 (E.D. Pa. 2020)(citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. For Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (July 20, 2020)). Accordingly, in an effort to address this challenge, the Bureau of Prisons ("BOP") developed an action plan which called for significant modification in its operations including suspension of outside visitors, tours and programming, as well as the implementation of protocols for social distancing, cleaning and hygienic treatment of its facilities, quarantining and testing of inmates, staff and necessary outside visitors, and the treatment of symptomatic inmates, among other things. www.bop.gov/resources/news/20200319_covid19_update. Throughout the pandemic, that action plan has been modified as necessary and was last updated on November 25, 2020 to still provide for screening and quarantining of new inmates at BOP facilities, screening and testing of inmates, and frequent cleaning, although it did permit some non-contact visiting and programming to resume with the proviso that any such visitors were also to be masked and temperature screened, visits were to take place behind plexiglass barriers and there would be thorough cleaning of all chairs and surfaces between visiting

groups. Prisoners are still limited in their movements to avoid gathering in congregate settings and generally only as necessary to facilitate thrice-weekly showers, laundry, commissary, telephone and computer/law library usage, they are still required to maintain appropriate social distancing as much as practicable, and telephone calls and teleconferencing with legal counsel continue to be utilized as much as possible. With the exception of necessary medical care, travel between facilities is restricted, official staff travel and training remains cancelled and staff continue to be assigned to the same postings in lieu of rotation as much as practicable. See, e.g., www.bop.gov/coronavirus/covid19_status.jsp.

At FCI Cumberland, which houses some 1,100 inmates and where Defendant is incarcerated, as of this writing, there is 1 inmate and 6 staff members who currently have tested positive for the virus. Although the institution has had no inmates or staff members die from COVID-19, to date it has had 375 inmates and 45 members of the facility's staff infected, all of whom have recovered. In addition, FCI Cumberland has fully inoculated 406 inmates and 180 staff with the coronavirus vaccine. See: www.bop.gov/coronavirus/.

According to the Centers for Disease Control, there are a multitude of medical conditions in adults which have been shown to correlate with a greater likelihood of severe illness from

COVID-19. Included among these conditions is "[a]sthma, if it's moderate to severe." See, www.cdc.gov. Severe illness is defined as meaning "that a person with COVID-19 may need: hospitalization, intensive care, a ventilator to help them breathe, or they may even die." Id. Additional conditions which can be more likely to result in severe illness are: cancer, chronic kidney disease, other chronic lung conditions such as COPD, interstitial lung disease, cystic fibrosis and pulmonary hypertension, Alzheimer's disease and other types of dementias, diabetes, down syndrome, heart conditions like coronary artery disease, heart failure, cardiomyopathies or hypertension, HIV, having an immunocompromised or weakened immune system, liver disease, obesity or the condition of being overweight[3], pregnancy, sickle cell disease, smoking, history of organ or blood stem cell transplant and stroke or cerebrovascular disease. www.cdc.gov.

In this case, "the government acknowledges that an inmate who presents a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19 presents 'a serious physical or medical condition that … substantially diminishes the ability of the defendant to provide self-care within the

---

[3] Overweight is defined as having a Body Mass Index (BMI) of greater than 25 kg/m but less than 30 kg/m. Obesity is defined as having a BMI of greater than 30 kg/m but less than 40 kg/m and severe obesity occurs with a BMI greater than 40 kg/m. www.cdc.gov

environment of a correctional facility,' as stated in note 1(A) as, due to his condition, the defendant may be less able to protect himself against an unfavorable outcome from the disease." (Government's Memorandum of Law in Opposition to Defendant's Motion for Early Release, pp. 14-15, *citing* United States v. Tartaglione, 2020 WL 3969778 at *5 - *6 (E.D. Pa. July 14, 2020)(Slomsky, J.)). Despite this concession, the Government nevertheless opposes the motion in the instant case.

For one, the Government asserts that Mr. Limehouse is not eligible for compassionate release because he has not shown that he suffers from any current underlying medical condition that is on the CDC's list of **certain** risk factors.[4] Although Defendant himself raises only his asthma as grounds for early release, the Government notes in its brief that Defendant's medical records reflect that he has a BMI of 29.3 which places him in the overweight category, although he is close to the 30 BMI minimum threshold for obesity. It further appears from the facility medical records that Defendant also suffers from COPD as the probable result of having formerly been a smoker. While it also appears that Defendant's asthma falls in the moderate category

[4] Although similar to the listing of other conditions that **might** increase a person's risk of severe illness, the high risk conditions are: advanced age (the older one is, the higher the risk), chronic kidney disease, chronic obstructive pulmonary disease (COPD), Obesity (BMI of 30 or higher), immunocompromised state from solid organ transplant, serious heart conditions (heart failure, cardiomyopathies, coronary artery disease), sickle cell disease and Type 2 diabetes. www.cdc.gov

and has been well-controlled and well-managed throughout at least the past several years by the medical unit through medication, including Asmanex and Albuterol and Mometasone inhalers, he did have a flare-up of wheezing and shortness of breath for a six-week period of time in February and March, 2019 requiring that he undergo a series of frequent nebulizer and IV treatments as well as a course of oral steroids and antibiotics. At one point, his breathing was so compromised that he required a wheelchair to be transported to the medical unit, his blood oxygen dropped to 89% and it appears that he may have had to have been taken to the hospital as there is a note indicating that he was returned to his housing unit via ambulance. Since that time, however, there is no indication that Defendant has suffered from any subsequent respiratory flare-ups or incidents and Defendant's most recent medical records suggest that he is currently being managed using only the albuterol inhaler. To be sure, at this point it appears to the Court that Defendant's medical condition is stable and well-controlled.

Of course, in addition to considering the defendant's medical condition, it is incumbent upon us to also determine whether the defendant is a danger to the safety of any other persons or to the community at large and examine the relevant factors articulated in Section 3553(a). On this point, we must take note of the circumstances of the offense for which

Defendant is now serving time and it does not militate in his favor. Again, Mr. Limehouse was charged with using an illegally possessed Ruger semi-automatic to fire three random shots in the front yard of a home in a densely-populated area and another in the middle of a typically-heavily travelled street before being apprehended. The last shot followed after Defendant was seen fleeing from the front yard in a zig-zag pattern dropping bullets as he ran. That these offenses took place in the middle of the night does mitigate their severity somewhat in that fewer people were in harm's way and traffic on Castor Avenue was not as heavy as it would have been either a few hours earlier or a few hours later. Moreover, Defendant was 43 years of age at the time he committed these offenses and cannot blame his behavior on youthful immaturity.

For his part, Defendant avers that he has been rehabilitated during his term of incarceration insofar as he has taken advantage of much of the psychological and educational programming and work opportunities made available to him in the prison setting, "has kept a steady … job in prison and has not had any infractions in a number of years." (Def's Brief in Support of Emergency Motion for Compassionate Release Sentence Reduction, pp. 11-12). In addition, Defendant avers that he is "deeply remorseful for [his] past illegal mishaps – all of them," "he is not a danger to the community," and he "has a low-

risk recidivist score from the BOP 'newly' implemented PATTERN SCORE." (Def's Brief, p. 12). Finally, Defendant asserts that he "could live with or has two family members that he could stay with for the duration of the pandemic," and that these family members "at a moments notice … would be able to assist the Court Probation Department with any and all information for the Court to release Mr. Limehouse to, either, of their homes." (Def's Brief at p. 12). Although the Government does not dispute that Defendant has held a steady prison job, has taken advantage of the educational and psychological offerings extended or has a low recidivist score, it nevertheless points out that Defendant fails to show how early release is compatible with the seriousness of his crimes, promotes respect for the law and provides a just punishment for his offenses especially when one considers that Defendant was on state probation when he committed those offenses and was sentenced as an armed career criminal. Indeed, the Government submits, the sentence which was imposed was a proper reflection of each of those considerations and was therefore both fair and appropriate.

This is truly a close case. On the one hand, Defendant clearly has demonstrated that he has chronic lung conditions which could indeed result in serious illness or worse should he contract COVID-19. It is also undisputed that Mr. Limehouse has

served roughly 70% of his sentence with no serious infractions[5] and that he has held a job and availed himself of psychological counseling and educational offerings within the prison setting. Defendant is also now 57 years of age with an anticipated release date of January 9, 2024 and, in light of his uncontested recidivist score and the fact that he is subject to five years of supervision upon release by virtue of his original sentence, is probably unlikely to offend again.

However, Defendant's medical condition *is* stable and he appears to have received appropriate medical care in a timely manner throughout his incarceration. The Correctional Institution in which he is housed appears to have done a fairly good job at managing the pandemic and has not recorded any inmate or staff deaths. FCI Cumberland is also in the process now of inoculating both its staff members and its inmate population with the COVID-19 vaccines. While it certainly still remains a possibility that Defendant could become exposed to the coronavirus and contract COVID-19, with each passing day that possibility becomes more and more remote.

It is of course impossible to predict the future. After weighing all of the foregoing factors, we conclude that the scale is tipped ever so slightly in the Government's favor in

[5] According to both the Government and the Bureau of Prisons' website for FCI Cumberland, Defendant's anticipated release date is January 9, 2024.

this case. In so finding, however, we shall chart a narrow course: Defendant's motion for compassionate release shall be denied with the proviso that he shall be free to re-file this motion to be reconsidered on an expedited basis *only* in the event that he does not receive his COVID vaccination within sixty days of the entry date of this Memorandum and Order.

**Conclusion**

As outlined above, Defendant's Emergency Motion for Compassionate Release shall be denied at this time. In the event that Defendant has not been vaccinated against COVID-19 within sixty (60) days, however, he shall have leave to re-file an abbreviated motion seeking compassionate relief for consideration on an expedited basis. In that event, the Government shall have ten (10) days to file its response thereto and to provide the Court with a sealed copy of Plaintiff's updated medical and vaccination records, *i.e.*, only those records subsequent to those already provided in response to this motion.

An Order follows.